UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 7: 15-05-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| HARLAN DAMRON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Harlan Damron's motion to suppress his October 6, 2014, statements to law enforcement.  [Record No. 72]  Damron asserts that his statements should be suppressed because they were obtained in violation of his due process rights under the Fourteenth Amendment to the United States Constitution. The motion was referred to United States Magistrate Judge Hanly A. Ingram for review and issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). An evidentiary hearing was held on November 18, 2015.  [Record No. 80]  On that same date, the magistrate judge recommended that Damron's motion to suppress be denied.  [Record No. 82]  Magistrate Judge Ingram's Recommended Disposition gave Damron fourteen days to file objections, but he has failed to meet this deadline.

This Court reviews *de novo* those portions of the magistrate judge's recommendations to which an objection is made.  28 U.S.C. § 636(b)(1)(c).  However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those

- 1 -

findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Further, failure to file objections to a magistrate judge's proposed findings of fact and recommendations constitutes waiver of the right to appeal.  *See United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008); *Wright v. Holbrook*, 794 F.2d 1152, 1154–55 (6th Cir. 1986).  Although Damron has not filed any objections, the Court has examined the record *de novo* and agrees with the magistrate judge's recommendations.

William Brock of the CSX Police Department, and Lacy Goodman, a civil claims investigator with CSX, interviewed Damron in Pike County, Kentucky on October 6, 2014, regarding a railroad tunnel fire that occurred in April 2014.  [Record Nos. 72-2, pp. 1–2; 82, p. 1]  While the defendant claims that the interviewees promised him a "better deal" or "lighter sentence" prior to the interview, he has presented no evidence of this promise. [Record No. 72-1, p. 1]

During the evidentiary hearing held on November 18, 2015, Brock testified that Goodman arranged for them to meet Damron on October 6, 2014, because Damron was attending a court hearing in Pike County, Kentucky on that date.  [Record Nos. 72-2, p. 2; 82, p. 1]  Brock testified that he did not discuss the investigation with Damron prior to Mirandizing him and having him sign a waiver of rights form.  [Record Nos. 72-2, p. 2–3; 82, p. 2; *see* Record No. 81, Exhibit 1.]  Before confessing to the arson, Damron stated that he was read and understood his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). [Record No. 72-3, p. 1]

Subsequently, Damron confessed that co-defendant Johnson offered to pay him $1,500 to set fire to the railroad tunnel because Johnson wanted to "get him a bridge built."

[Record No. 72-3, p. 2]   Damron stated that roughly two weeks before the incident, he attempted to light the tunnel on fire with a burning piece of paper, but to no avail.   As a result, he tried again and was successful.   [*Id.*, p. 3]   Johnson had been prepping the tunnel by pouring gas on the thirteenth column, where Damron threw the piece of burning paper.   [*Id.*, p. 2]   Though Damron did not see a fire the night that he threw a burning piece of paper on the thirteenth pole, he saw smoke the next morning.   [*Id.*, p. 3]   A couple of weeks later, Johnson paid him $1,000 for setting the fire.   [*Id.*]

Damron also stated that he spent the $1,000 on restitution, a payment for his wife's car, a trailer payment, and rental payment for a lot.   [*Id.*, p. 4]   The defendant also informed Brock and Goodman that Johnson's wife encouraged him to work with Johnson.   [*Id.*, p. 5]   Damron testified that neither Johnson nor Johnson's wife threatened Damron to keep quiet, but Damron mentioned that Johnson referred to an incident where Damron had allegedly stolen a taillight and given it to Johnson.   [*Id.*, p. 7]   At the conclusion of the interview, Brock asked Damron if he was promised anything or coerced into making a statement, and he answered, "No sir."   [*Id.*, p. 13]

After the interview and the filing of his co-defendant's motion to suppress, Damron filed the present motion to suppress the statements he made during the October 6, 2014 interview.   [Record No. 72]   He alleges that Brock's promises of leniency prior to the interview rendered his confession involuntary under the Due Process Clause of the Fourteenth Amendment.

- 3 -

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."[1]  U.S. CONST. amend. XIV, § 1.  The Supreme Court has held that due process requires the exclusion at trial of involuntary statements.  *Jackson v. Denno*, 378 U.S. 368, 385–86 (1964).  Where a defendant claims that his confession was involuntary under the Due Process Clause, the government bears the burden of proving that the confession was voluntary.  *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir. 1992).

 The Sixth Circuit utilizes a three-factor test to determine voluntariness, analyzing whether: (i) "the police activity was objectively coercive;" (ii) the coercion was sufficient to "overbear the defendant's will;" and (iii) "the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement."  *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (citing *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988)).  Factors that influence this analysis include the defendant's age, education, and intelligence, whether he was informed of his rights, the length and extent of questioning, and the use of any physical punishment.  *Id.* at 422–23.

In this case, there is no evidence that Brock's or Goodman's activity was objectively coercive.[2]  While Damron claims that he has a "rudimentary education and comes [from] a

---

[1]    The Court will presume that the Fourteenth Amendment applies because Brock was acting under the authority granted to him by the Kentucky Revised Statutes.  K.R.S. §§ 277.270, 277.280, 277.290.  [*See* Record No. 78.]

[2]    While Damron has not explicitly claimed that his *Miranda* waiver was invalid, the Court notes that under *Colorado v. Connelly*, the voluntariness of a waiver hinges on the existence of police overreaching.  479 U.S. 157, 170 (1986).  Because the record fails to establish the existence of overreaching or any suggestion that Damron's waiver was unknowing or

poor social economic background," he has offered no evidence of these alleged facts. [Record No. 72-1, p. 2]   Further, testimony and exhibits at the evidentiary hearing established that Brock informed Damron of his rights.  [Record Nos. 72-2, pp. 2–3; 72-3, p. 1; 82, p. 2; *see* Record No. 81, Exhibit 1.]  Damron has made no allegations regarding the length and extent of questioning, and no evidence established that these two factors would weigh in favor of a finding of police coercion.

The only allegation of coercion is that Brock and Goodman promised Damron a lighter sentence in exchange for a confession.  [Record No. 72, p. 1]  However, Damron offered no evidence of the alleged promise, and the evidence refutes his allegation.  For instance, Brock testified at the evidentiary hearing that no promises were made.  [*See* Record No. 82, p. 2.]  Moreover, at the conclusion of the interview at issue, Damron admitted that no promises were made.  [Record No. 72-3, p. 13]  Because there is no evidence of objectively coercive police activity, Damron's confession was not involuntary.  *See Pena v. Prelesnik*, No. 1:11-CV-450, 2014 WL 295159, *28 (W.D. Mich. Jan. 24, 2014) (finding no coercion where petitioner's testimony concerning a promise of leniency was not corroborated).

In addition, while a promise of leniency "may be so attractive as to render a confession involuntary," *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992), such a statement is usually permissible.  *United States v. Delaney*, 443 F. App'x 112, 128 (6th Cir. 2011).  Generally, promises are coercive only "if they are broken or illusory."  *Id.* (citing *United States v. Johnson*, 351 F.3d 254, 262 n.1 (6th Cir. 2003)) (internal quotation marks

---

unintelligent, this avenue for suppressing the statements would also fail.  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

omitted).  And there is no such evidence here.  Consequently, there is no basis for concluding that the alleged promise was coercive or that such promises constituted a motivating reason for the defendant's confession.

Instead, the Court concludes that Damron voluntarily submitted to an interview with Brock and Goodman.  [Record No. 72-2, p. 2]  He was read and stated that he understood his constitutional rights.  [*Id.*, pp. 2–3]  Moreover, he voluntarily signed a *Miranda* waiver.  384 U.S. at 471.  [*Id.*, p. 3]  The recording of the interview does not reveal any evidence of coercion or any suggestion that Damron's actions were involuntary.  Therefore, Damron's statements to Brock and Goodman will not be suppressed.

Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Damron has waived all objections to the magistrate judge's Recommended Disposition regarding his motion to suppress by failing to file timely objections.

2. The Recommended Disposition of Magistrate Judge Hanly A. Ingram [Record No. 82] is **ADOPTED** and **INCORPORATED** by reference.

3. Defendant Damron's motion to suppress [Record No. 72] is **DENIED**.

4. Notwithstanding the defendant having waived all objections to the magistrate judge's Recommended Disposition, the Court has reviewed the record *de novo* and concludes that Defendant Damron's statements to Brock and Goodman on October 6, 2014, were voluntary.

This 9th day of December, 2015.



Signed By:

*__Danny C. Reeves__*  DCR

**United States District Judge**